1

2

3

4

5

6

7

8    IN THE UNITED STATES DISTRICT COURT

9    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MARK ANTHONY,

11            Petitioner,                    No. CIV S-05-0482 FCD EFB P

12        vs.

13   JOHN MARSHALL,

14            Respondent.           FINDINGS & RECOMMENDATIONS

15   _____/

16        Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ

17   of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges a 2003 judgment of conviction

18   entered against him in Sacramento County Superior Court on charges of failing to stop at an

19   accident resulting in property damage (Cal. Veh. Code § 20002(a)), driving with a suspended

20   license (Cal. Veh. Code § 14601.2(a)), two counts of driving under the influence (DUI) (Cal.

21   Veh. Code § 23152(a)), and two counts of driving with .08 percent or greater blood-alcohol

22   content (Cal. Veh. Code § 23152(b)), with findings that petitioner committed two of the felony

23   offenses while released from custody on the other felony charges (Cal. Pen. Code § 12022.1),

24   that petitioner was previously convicted of a strike under California's Three Strikes Law (Cal.

25   Pen. Code §§ 667(b) - (I), 1170.12), and that petitioner had two prior DUI convictions for which

26   he had also served prison terms within the meaning of Cal. Pen. Code § 667.5(b)).  Petitioner

1

1   seeks relief on the grounds that: (1) he received ineffective assistance of appellate counsel; (2)

2   his right to due process was violated when he was not allowed to attend the trial or sentencing

3   proceedings; and (3) his right to due process was violated when he was not allowed to testify at

4   trial.  Upon careful consideration of the record and the applicable law, the undersigned

5   recommends that petitioner's application for habeas corpus relief be denied.

6   **I. Background**

7           In its unpublished memorandum and opinion affirming petitioner's judgment of

8   conviction on appeal[1], the California Court of Appeal for the Third Appellate District provided

9   the following factual summary:

10           A jury convicted defendant Mark Anthony of failing to stop at an
        accident resulting in property damage (Veh.Code, § 20002, subd.
11       (a)), driving with a suspended license (Veh.Code, § 14601.2, subd.
        (a)), two counts of driving under the influence (DUI) (Veh.Code, §
12       23152, subd. (a)), and two counts of driving with .08 percent or
        greater blood-alcohol content (Veh.Code, § 23152, subd. (b)).  In a
13       bifurcated proceeding, the jury further found he committed two of
        the felony offenses while released from custody on the other
14       felony charges (Pen.Code, § 12022.1), he was previously
        convicted of a strike under the Three Strikes law (Pen.Code, §§
15       667, subds.(b)-(I), 1170.12), and he had two prior DUI convictions
        for which he had also served prison terms within the meaning of
16       Penal Code section 667.5, subdivision (b).  The trial court
        sentenced defendant to state prison for an aggregate term of 11
17       years four months.

18                                    * * *

19       **Facts**

20       **A. First Incident**

21       On September 29, 2001, at approximately 9:00 p.m., Sergeant
        David Yenne of the Grant School District Police Department
22       noticed defendant driving and apparently slowing for a turn.
        Defendant subsequently "corrected the turn" and continued on
23       before swerving into a parking lot, back into the road, and then
        back into the parking lot.  Defendant stopped so his car was
24       positioned partly in the road and partly in the parking lot, and

25   _____

26           [1]  Notice of Lodging Documents on July 8, 2005 (Dckt. No. 9), Resp.'s Lodg. Doc. C
     (hereinafter Opinion).

                                          2

Sergeant Yenne stopped behind him and activated his emergency lights.

Sergeant Yenne noticed defendant's eyes were bloodshot and glassy, his speech was slightly slurred, and he smelled of alcohol. Defendant said he had just left his girlfriend's house and admitted he had been drinking there. He did not have a driver's license. Yenne called his dispatcher and asked for a California Highway Patrol (CHP) officer to meet him at the scene to conduct a DUI evaluation.

CHP Officer Ragnar Schubert arrived at approximately 9:23 p.m. Officer Schubert also noticed that defendant exhibited signs of intoxication, including the strong odor of alcohol, red and watery eyes, and somewhat slow and slurred speech. Defendant said he had last eaten at approximately 5:00 p.m. and had drank half a can of Budweiser beer 45 minutes prior, and had finished drinking within the last five to 10 minutes. Schubert had defendant do five field sobriety tests, which he did not perform satisfactorily. After a preliminary alcohol screening test indicated the presence of alcohol, Schubert arrested defendant. Defendant subsequently became upset and angry. After defendant was arrested, Sergeant Yenne searched the car. He found a large, open beer can in a paper bag in the front passenger side of defendant's car.

A blood sample taken from defendant at approximately 11:15 p.m. had a blood-alcohol level of .20 percent. It appeared to Schubert that defendant's level of intoxication might have increased slightly after their initial encounter.

**B. Second Incident**

On May 20, 2002, at approximately 11:00 p.m., Zakayaiah Smith was walking toward her car when defendant drove rapidly down the street, without using his headlights, and swerved and hit her car. Defendant appeared to be seriously injured when his head hit the front windshield, and Smith went to investigate. As she approached, defendant got out of the car and she noticed his face was bloody. It appeared defendant had been drinking; he staggered and "could barely stand up straight." He said he was going to leave, and Smith told him he could not leave and she was going to call the police. When defendant tried to leave, another person struggled with him and knocked him unconscious. However, he got up several minutes later and left without giving his name.

CHP officers found defendant walking near the scene of the accident. He was bleeding from the left side of his head, there was blood on his face, and he said he had hit a car that was parked in the middle of the road and was looking for a phone to call someone to come and get him. He did not have a driver's license. He

exhibited signs of intoxication, including red and watery eyes, difficulty keeping his balance, an odor of alcohol from his breath, and slurred speech.  However, he said he had not had anything to drink.

Because of his injuries, defendant was taken to the hospital, and no field sobriety tests were given.  Defendant told a paramedic that he took insulin, and the paramedic noted defendant could have sustained a concussion.  Lack of insulin or a concussion can cause slurred speech, difficulty balancing, or irrational behavior.  Defendant became combative and made threatening statements to the paramedic.  A blood sample taken from defendant at approximately 1:40 a.m. had a blood-alcohol level of .26 percent.

**Procedural Background**

Defendant was charged for his conduct in the first incident by an amended information (case No. 01F08222) with DUI, driving with a .08 percent or more blood-alcohol level, driving with a suspended license, and related enhancements.  He pleaded guilty to the misdemeanor charge of driving with a suspended license, and he went to trial on the alcohol-related charges.  The jury reached a deadlock, and the trial court declared a mistrial.[2]

Over defendant's opposition, the People subsequently filed a consolidated information including the charges in case No. 01F08222 with the charges in case No. 02F05503, which were based on the second incident.  Defendant requested a severance of the charges before trial, but the trial court denied relief.

Petitioner appealed his conviction to the California Court of Appeal for the Third Appellate District, claiming that the trial court erred by denying his motion to sever and that the evidence was insufficient to sustain the strike enhancement.  Resp.'s Lodg. Doc. A.  On November 5, 2004, petitioner's judgment of conviction was affirmed.  Lodg. Doc. C.

On December 17, 2004, petitioner filed a petition for review in the California Supreme Court.  Lodg. Doc. D.  Although the claims contained in that petition are difficult to decipher, it appears that petitioner raised all of the claims that are contained in the habeas petition filed in this court on March 10, 2005.  *Id.*  The petition for review was summarily denied by order dated January 19, 2005.  Lodg. Doc. E.

---

[2] Defendant testified at the first trial but not at the second, which resulted in his conviction.

On March 10, 2005, petitioner filed his federal habeas petition in this court.  Dckt. No. 1.
Respondent filed an answer on July 8, 2005.  Dckt. No. 8.  Petitioner filed a traverse on January
18, 2006, and a supplemental traverse on December 7, 2006.  Dckt. Nos. 24, 29.

On February 28, 2008, petitioner filed a motion to file a supplemental petition, along
with a supplemental petition containing the sole claim that his rights under the Sixth And
Fourteenth Amendments were violated during sentencing, in violation of the rule set forth in
*Cunningham v. California*, 549 U.S. 270 (2007).  Dckt. Nos. 32, 33.  By order dated March 30,
2009, this court construed petitioner's filings as a motion to file an amended petition, and denied
the motion without prejudice on the grounds that the supplemental petition did not include the
claims raised in petitioner's original habeas petition and was therefore not complete in itself, in
violation of Local Rule 220.  Dckt. No. 36.  On April 22, 2009, petitioner filed a motion for
reconsideration of the March 30, 2009 order.  Dckt. No. 37.  On July 15, 2009, the motion for
reconsideration was denied by the district judge assigned to this action.  Dckt. No. 38.

On August 26, 2009, petitioner filed a motion to stay and abey these proceedings so that
he could exhaust in state court the claims raised in the habeas petition filed in this court on
March 10, 2005, and possibly his *Cunningham* claim as well.  Dckt. Nos. 39, 42.  On October 8,
2009, petitioner filed an amended petition for writ of habeas corpus, which included the claims
contained in his March 10, 2005 habeas petition and also a *Cunningham* claim.  Dckt. No. 41.
Previously, on approximately August 22, 2009, petitioner filed a petition for writ of habeas
corpus in the California Supreme Court, in which he raised the claims contained in the March 10,
2005 petition filed in this court, but did not raise a *Cunningham* claim.  Ex. to Dckt. No. 39.  On
October 14, 2009, the California Supreme Court summarily denied that petition.  Dckt. No. 42.
On October 30, 2009, petitioner notified this court that the California Supreme Court had denied
his habeas petition, and requested that this court rule on the merits of all of the claims contained
in his October 8, 2009 amended petition.  By order dated February 2, 2010, this court denied
/////

5

1    petitioner's August 26, 2009 motion for stay and abeyance on the ground that it was moot in

2    light of the decision of the California Supreme Court.  Dckt. No. 43.

3          In light of the circumstances described above, the habeas petition filed in this court on

4    March 10, 2005 is the operative petition in this matter.  The "first amended petition" filed on

5    October 8, 2009 was not properly filed; therefore, the allegations contained therein will not be

6    considered by this court.  Petitioner's claim based on the *Cunningham* decision has not been

7    raised in any operative petition filed in this court and appears to be unexhausted.  Accordingly,

8    this court will not address petitioner's *Cunningham* claim.

9    **II. Analysis**

10           **A.  Standards for a Writ of Habeas Corpus**

11          Federal habeas corpus relief is not available for any claim decided on the merits in state

12   court proceedings unless the state court's adjudication of the claim:

13                     (1) resulted in a decision that was contrary to, or involved an
                       unreasonable application of, clearly established Federal law, as
14                     determined by the Supreme Court of the United States; or

15                     (2) resulted in a decision that was based on an unreasonable
                       determination of the facts in light of the evidence presented in the
16                     State court proceeding.

17   28 U.S.C. § 2254(d).

18          Under section 2254(d)(1), a state court decision is "contrary to" clearly established

19   United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law

20   set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially

21   indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different

22   result.  *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406

23   (2000)).

24          Under the  "unreasonable application" clause of section 2254(d)(1), a federal habeas

25   court may grant the writ if the state court identifies the correct governing legal principle from the

26   Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's

                                                  6

1    case.  *Williams*, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because

2    that court concludes in its independent judgment that the relevant state-court decision applied

3    clearly established federal law erroneously or incorrectly.  Rather, that application must also be

4    unreasonable."  *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not

5    enough that a federal habeas court, in its independent review of the legal question, is left with a

6    'firm conviction' that the state court was 'erroneous.'")

7            The court looks to the last reasoned state court decision as the basis for the state court

8    judgment.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court reaches a

9    decision on the merits but provides no reasoning to support its conclusion, a federal habeas court

10   independently reviews the record to determine whether habeas corpus relief is available under

11   section 2254(d).  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

12           **B.  Petitioner's Claims**

13           All of the exhausted claims presented to this court are related to the trial court's grant and

14   then revocation of petitioner's request to represent himself at trial, and petitioner's subsequent

15   absence from the courtroom during the trial and sentencing proceedings.  These claims were

16   summarily denied on the merits by the California Supreme Court.  Therefore, this court must

17   independently review the record to determine whether habeas corpus relief is available under

18   section 2254(d).  *Delgado*, 223 F.3d at 982.  After summarizing the relevant facts from the state

19   court record, the court will analyze petitioner's claims in turn below.

20           **1.  <u>Background</u>**

21           The state court record reflects that on February 27, 2003, at a pretrial motions hearing,

22   petitioner made an oral request pursuant to *Faretta v. California,* 422 U.S. 806 (1975) (*Faretta*)

23   to represent himself at trial, after his motion for substitute counsel was denied.  Reporter's

24   Transcript on Appeal (RT) at 172-90.  Petitioner's *Faretta* request was granted by Judge

25   Bakarich.  Suppl. Traverse, Ex. B3; RT at 190-93.  Judge Bakarich advised petitioner that if he

26   was disruptive he would be removed from the courtroom and an attorney would be brought in to

1   finish his case.  RT at 192.  He also informed petitioner that his case was "not going to get

2   continued," even if he later hired an attorney.  *Id.*  Petitioner signed a document which informed

3   him of the dangers of representing himself at trial and the penalty he faced if found guilty.

4   Suppl. Traverse, Ex. B3.  The court found that petitioner had made the decision to represent

5   himself "knowingly, intelligently and voluntarily" and "with full knowledge of the risks and

6   dangers of doing so."  *Id.*  Petitioner was informed he would continue with the investigator

7   already assigned to his case.  RT at 194.  He was advised that the trial would begin after the

8   upcoming weekend.  *Id.* at 195.

9         On March 4, 2003, despite Judge Bakarich's advice that a trial continuance would not be

10  granted, petitioner's trial was continued to April 2, 2003, at petitioner's request.  *Id.* at 203-05.

11  On March 27, 2003, petitioner made an oral motion to continue the trial date again, which was

12  denied by Judge Ransom.  *Id.* at 198.  On April 2, 2003, petitioner appeared before Judge Virga.

13  *Id.* at 196.  Petitioner advised Judge Virga that he was not ready to proceed with the trial and he

14  requested another continuance of the trial date.  *Id.* at 198-203.  Petitioner stated that he was

15  "totally not prepared" and that he still intended to file motions and conduct further investigation.

16  *Id.* at 209-211.  Judge Virga denied petitioner's request for another trial continuance.  *Id.* at 217.

17  The judge noted that petitioner had brought at least seven motions for substitute counsel, one of

18  which was successful, and five motions to represent himself, and reminded petitioner that he was

19  "expected to proceed as an attorney would in the case."  *Id.*

20        At that point, petitioner asked for the appointment of counsel.  *Id.* at 219.  Petitioner

21  complained that he "would like to be pro per, but you wouldn't continue [the trial]."  *Id.*  He

22  stated that he would try to have an attorney ready to represent him "within 24 hours."  *Id.* at 219-

23  20.  Petitioner repeated that he was not ready for trial because he had not had time to prepare his

24  defense.  *Id.* at 222.  Judge Virga informed petitioner that he had not stated sufficient grounds to

25  continue the trial and that he could either proceed pro se or the court would appoint David

26  Muller, petitioner's former attorney, to represent him.  *Id.* at 223.  Petitioner declined to accept

Mr. Muller and asked for new counsel. *Id.* The court informed petitioner that he was not

allowed to choose his court appointed attorney. *Id.* at 224. The trial court gave petitioner until

the next day to prepare and file any motions he thought were necessary. *Id.* at 226. Petitioner

was informed that, at that point, the trial would proceed. *Id.*

At the next court hearing on April 3, 2003, petitioner refused to respond to the court's

questions or to participate in the proceedings. *Id.* at 229, 230, 231, 232, 234, 235, 236. The

court noted for the record that petitioner was

> fully aware of the limitations an in-custody pro per faces. If anything the
> defendant is an experienced pro per knowing his limitations. He still insists on
> representing himself. He then tries to use his pro per status to continually delay
> those proceedings. This pattern is clear from a review of the proceedings in this
> case. . . . He once again claims as he did yesterday that it is his pro per status that
> necessitates a further continuance of the case. A pro per defendant is held to the
> same standards as a licensed attorney. The pro per is to be afforded no special
> treatment. He's to be prepared just as an attorney who would be prepared. On
> the record before me this defendant has had adequate time to prepare for trial.
> Because he has not so prepared himself, it is not good cause to postpone the trial.
> If the standard was is this defendant prepared for trial, in my opinion this case
> would probably never go to trial. Any time he wished he could claim he was not
> prepared and the case would have to be continued.

*Id.* at 242-43. The judge did, however, agree to postpone jury selection for several more days in

order to give petitioner and his investigator more time to prepare. *Id.* at 245.

At the next court hearing on April 8, 2003, petitioner told the court that because he was

unable to obtain a continuance of the trial in order to prepare his defense, he intended to "turn

my back on the Court and not acknowledge this Court or the Judge." *Id.* at 253, 254. While he

was making these statements, petitioner was turned away from the bench, facing the spectator

section. *Id.* at 255, 294. The trial judge admonished petitioner that he would not allowed to

attend the trial if he intended to sit in such a way as to face the audience and that he would have

to "sit forward in your seat." *Id.* at 255. The judge stated that he would remove petitioner from

the courtroom and the trial would proceed in his absence if he refused to sit facing the court. *Id.*

at 255-57. When the court asked petitioner whether he intended to sit properly in his seat,

petitioner refused to answer. Petitioner was then removed from the courtroom. *Id.* at 258. *See*

1    *also id.* at 293-95.

2          Later that day, the trial judge explained that he had caused the following memorandum to

3    be read to petitioner in his holding cell:

4                Mr. Anthony, your trial was ordered recessed until 11:00 a.m. this
             morning.  I was informed by the Sheriff's Department that you
5            refused to return to Court at that time.  Your trial will proceed at
             1:30 p.m. this afternoon.  At this time, you are still proceeding
6            with pro per status.

7                I have appointed attorney David Muller as stand-by counsel.  If
             you choose to return to court this afternoon and do not act in a
8            disruptive fashion, you will be allowed to proceed in pro per.  If
             you choose to return to court and I allow you to proceed in the trial
9            as pro per and you later act in a disruptive fashion during the trial,
             you will be removed from the courtroom, and Mr. Muller will be
10           appointed as your attorney, and he will then represent you until the
             completion of the trial.

11
             If you refuse to return to court at 1:30 p.m., I intend to appoint Mr.
12           Muller as your attorney of record, and your trial will proceed
             immediately until its completion, with Mr. Muller representing you
13           in your absence.  If this occurs, you may still elect to return to the
             courtroom at any time during the trial, upon assurance to the Court
14           that you will not act in a disruptive fashion.

15               If Mr. Muller is substituted as your attorney of record, you will not
             be able to return to pro per status during the trial.
16

17   *Id.* at 263-64.  Petitioner concedes that he received this memorandum on April 8, 2000.  Suppl.

18   Traverse, Exs. A2, B1.  At 1:30 p.m., the escort officer informed the judge that petitioner refused

19   to return to court, stating that he didn't recognize the court and did not wish to be "a part of [the]

20   judge's courtroom."  RT at 266.[3]  According to the officer, petitioner also declined to return to

21   court to have the above-described memorandum explained to him, stating that "he did not wish

22   to return and didn't need the memorandum explained to him," that the memorandum was

23   "probably invalid" because it wasn't signed and didn't contain a seal,  and that "he felt that if he

24   were to return, [the judge] would revoke his pro per status and assign the lawyer he didn't wish

25          [3]  The officer was not placed under oath; the judge simply asked him what had occurred.
26   *Id.*

10

1   to be assigned." *Id.* at 267.   The trial judge found that petitioner had refused to return to court;

2   therefore, he revoked petitioner's pro per status and appointed Mr. Muller to represent him at

3   trial. *Id.* at 268.[4]

4       At that point, petitioner's defense counsel moved to dismiss the jury panel on the ground

5   that the jurors may have been prejudiced against petitioner because of the delay involved in

6   beginning the trial process. *Id.* at 269-70.   The trial judge granted this request and the jury panel

7   was excused. *Id.* at 270.   At the start of the proceedings on the next trial date, April 9, 2003, the

8   trial judge was advised by the bailiff that petitioner had been asked by the "tank officer" whether

9   he wished to be present at the proceedings and had declined. *Id.* at 292-93.[5]   The trial judge

10  informed the jury panel that petitioner was "absent from the courtroom," but that they were "not

11  to speculate as to the reasons for his absence," and that petitioner's absence "must not in any

12  way affect your verdict or be considered by you in the course of your deliberations." *Id.* at 300.

13  A deputy sheriff asked petitioner at the start of the next trial date whether he wished to be

14  present. *Id.* at 439-40.   Petitioner declined to do so and the trial court found that petitioner had

15  voluntarily absented himself from the trial. *Id.*

16      On April 16, 2003, petitioner was asked by a deputy sheriff whether he wanted to testify

17  and he responded that he did not. *Id.* at 554.   Petitioner informed the deputy that "since [the trial

18  judge] ordered me out of the courtroom, he can court order me back into the courtroom." *Id.*

19  ////

---

20      [4]   Later that same day, the judge reaffirmed that petitioner had "intentionally absented
21  himself from these court proceedings," had indicated by his conduct that he did not wish to
    participate in the proceedings, and had chosen not to attend the trial. *Id.* at 288.   He ordered that
22  petitioner be brought to a holding cell in the courthouse every court day and asked whether he
    wished to attend the proceedings. *Id.* at 289.   The court also granted the request of petitioner's
23  trial counsel that petitioner be asked by a sheriff's deputy whether he wished to testify at the
    trial. *Id.*   The court undertook these measures after considering, but rejecting, the option of
24  having petitioner forcibly brought to the courtroom to make an express waiver of his right to be
    present. *Id.* at 295.   The court ultimately concluded, after considering the "totality of the
25  circumstances," that petitioner had chosen "to be absent voluntarily." *Id.*

26      [5]   Petitioner's exact words were: "Fuck no; fuck you." *Id.* at 293.

11

1   The bailiff informed the trial court that "he'll come back, but he wants to see the court order."

2   *Id.*  The trial judge stated that petitioner's remarks indicated he may have had a change of heart.

3   *Id.*  He interpreted petitioner's statements to mean the following: "he believes that if he's ordered

4   by the court to be present during the court proceedings then in that circumstance he is willing to

5   be present."  *Id.*  Accordingly, the trial court issued an order for petitioner to be "physically

6   present" in the courtroom.  *Id.* at 555-56.[6]

7        Petitioner returned to the courtroom.  *Id.* at 557.  Petitioner was notified that his "pro per

8   privileges" had been revoked and that Mr. Muller was acting as his trial counsel.  *Id.*  Petitioner

9   argued that he had been denied the opportunity to prepare his defense, that he did not wish to

10  proceed with appointed counsel, and that he wished to "have [his] pro per status returned."  *Id.* at

11  558.  The trial court denied this request.  *Id.*

12       Shortly thereafter, the question arose whether petitioner wished to testify.  *Id.* at 571.

13  Petitioner asked whether he could testify regarding only one of the cases against him, but not

14  both.  *Id.*  Petitioner stated that he hadn't made a decision yet whether to testify and that he

15  needed to talk to his counsel to ascertain what had occurred so far in the trial.  *Id.* at 572.  When

16  the judge asked whether he was asking for time to confer with his counsel before he made his

17  decision, petitioner answered, "Yes."  *Id.*  At that point, petitioner was allowed to confer with his

18  counsel outside of the courtroom to discuss this issue.  *Id.* at 574-76.

19  *////*

20  _____

21  [6]  The trial judge made clear that he did not intend to order a "physical extraction" against
    petitioner's will.  *Id.*  He explained that his order was

22            consistent with what the defendant's requesting.  He's essentially
             putting his condition on his return to court.  I'm prepared to meet
23            that condition in that appears [sic] to be some willingness to be
             present during the court proceedings and the court deems one's
24            right to be physically present an important right, and if there is any
             indication that this defendant wishes to exercise that right I intend
25            to give him the opportunity to exercise that right.

26  *Id.* at 555.

1    When the parties returned to court, petitioner's counsel declared a "legal conflict" and

2  asked to be removed from the case because of hostility directed towards him by petitioner.  *Id.* at

3  577, 592; Clerk's Transcript on Appeal (CT) at 294.  The court immediately held an unreported

4  in camera hearing.  RT at 577.  Petitioner states that he did not participate in that hearing.  Suppl.

5  Traverse, Ex. A4.  After the in camera hearing, the trial court denied counsel's request to be

6  removed but ordered that petitioner be physically restrained in the courtroom for reasons of

7  security.  RT at 592.  At that point, petitioner became verbally abusive and asked to "go back to

8  where I was."  *Id.* at 594.  The trial judge ordered petitioner removed from the courtroom.  *Id.*

9  The court then made the following announcement:

> The defendant was given an opportunity to remain in the
> courtroom.  He was warned per the specific provisions of Penal
> Code section 1043 B1 that he could sit in his chair, that he would
> have to be restrained as I indicated based upon the results of the
> security hearing, and I'll indicate that I found the information
> provided from Mr. Muller to be credible.  And was based upon
> those representations that I felt the restraints were necessary.  I was
> prepared to even allow the defendant to, well, I ordered that his
> hands be restrained.  They were positioned in such a way that the
> jury could not see them in that the hands were placed underneath
> the table, so they would see no evidence of shackling.  I asked the
> sheriff's department to remove his leg chains because I had a
> concern about the jury viewing the leg chains with the defendant
> being present.  I specifically warned the defendant pursuant to
> Penal Code Section 1043 B1 that he could remain in the
> courtroom.  He would have to remain in the courtroom restricted
> as I indicated, and that he would be removed from the courtroom if
> he continued with disruptive behavior, disorderly behavior, or
> disrespectful behavior with him in the courtroom.  And if he
> continued with that type of behavior that he would be removed
> from the courtroom.  The defendant's outburst's at this time was
> [sic], to say the least, quite disruptive.  It was disorderly.  It was
> disrespectful.  His voice continued to rise.  He interrupted the
> court, and I am satisfied would continue to interrupt the court.
> Therefore he has been removed from the courtroom pursuant to
> Penal Code section 1043 B1.

*Id.* at 594-95.

With respect to whether petitioner would testify at trial, the trial court concluded that

petitioner had deliberately caused a situation where he was unable to participate in the

proceedings and that he had "given up his right to further participate in the trial." *Id.* at 595-96.

The court summarized the situation as follows:

> I want to make the record clear regarding the defendant's presence yesterday in court proceedings. I ruled that it was necessary to restrict the defendant, as I indicated, after conducting a security hearing where I heard evidence from Mr. Muller and the defendant. The defendant was informed he could remain present in the courtroom with the restrictions imposed. The defendant then steadily requested of the court to be removed from the courtroom indicating that he did not wish to be present. In that we had conducted proceedings during the day with the defendant present I felt it appropriate to make an effort to provide the defendant his right to be present during court proceedings. In spite of my effort the defendant insisted on not being present. The defendant directed a profanity laced outburst at the court that was disruptive, disorderly and disrespectful. Efforts to end the tirade by court direction was futile. Thus, the court was left with no option but to remove the defendant from the courtroom and proceed in his absence. I find that the defendant is, I find that the defendant, by his tactics yesterday voluntarily absented himself from the trial within the meaning of Penal Code section 1043, subdivision B, subdivision 2. He did not wish to be present and he purposely engaged in conduct in order to force the course to remove him from the courtroom. Conduct also justified the defendant being removed from the courtroom per the provisions of Penal Code section 1043 B1. I ordered the sheriff's department today to inquire of the defendant if he wished to be present during court proceedings today because of my finding that he voluntarily absented himself from yesterday's proceedings. The sheriff's department informed me that the defendant replied he did not wish to be present today. I find that the defendant has voluntarily absented himself from today's court proceedings within the meaning of Penal Code section 1043 B2. The Court also ruled yesterday that it denied counsel's request to be relieved as counsel for defendant in this case. The defendant began this trial representing himself. His pro per privilege was revoked because of his disruptive, disorderly and disrespectful conduct. Standby Mr. Muller was then appointed to represent the defendant. In my opinion Mr. Muller's request to be relieved would have amounted to a forfeiture of this defendant's right to counsel. No other counsel could be appointed at this stage of trial and be prepared to represent the defendant. The Court logically and legally could not reconfer pro per status on a defendant who has promised then and then [sic] carried out the promise to behave in a disorderly, disruptive and disrespectful manner. If the Court relieved Mr. Muller, the trial would have had to proceed with a criminal defendant being totally devoid of any representation. Existing case law requires that the, before the court takes the drastic case of forfitting [sic] the defendant's right to counsel, the court must

conduct a hearing to determine if such forfeiture is appropriate. After conducting the hearing yesterday I denied counsel's right to be relieved. I could not find clear and convincing evidence to justify such forfeiture. Existing case law suggests that forfeiture of counsel is rarely the most appropriate response to a defendant's misconduct directed at his counsel. The court in *Gilcrist versus O'Keefe* 260 F third at page 100 suggests taking intermediate steps to protect counsel before a complete denial of the right to counsel is imposed. I took one such intermediate step in this case by imposing physical restraints on the defendant in the least restrictive means possible which provided necessary security to defense counsel. I felt this step necessary where defendant's fundamental right to counsel was at stake. By the defendant's conduct in north he did not wish to be physically present in the courtroom under the physical restraints imposed by the court and voluntarily absented himself. I believe a more appropriate remedy at this time in response to defendant's misconduct is to remove the defendant and have counsel remain rather than removing counsel and leaving the misbehaving defendant present. Even the *Faretta* decision recognition [sic] that a violent, threatening and disruptive defendant is hardly the ideal candidate for pro per representation. As I noted earlier the defendant has voluntarily absented himself from the courtroom. I believe the remedies I have chosen and the defendant's request to absent himself from the courtroom insures the defendant his fundamental right to counsel, and at the same time protects counsel from the conduct that the defendant stated he would take in continued court proceedings in order to impose the drastic step of counsel forfeiture. Existing case law I believe requires a showing of more than what Mr. Muller described yesterday. Combination of the defendant being physically restricted and his voluntary absence from the courtroom provides sufficient control of his conduct to allow his attorney to continue to represent him.

*Id.* at 617-20.

After the trial court made this statement, petitioner's counsel informed the court that, while the jurors were not in the courtroom during petitioner's outburst, they may have heard the outburst in the hallway and may also have observed petitioner "being led out of the courtroom from the side when he was still in chains." *Id.* at 621. The trial judge responded that petitioner had caused "the necessity for removal from the courtroom" and that he had "nobody to blame but himself for his conduct." *Id.*

////

////

15

1   Petitioner was asked but declined to be present at any further court proceedings,

2   including the reading of the verdict, the jury trial on the prior conviction allegations, and the

3   sentencing proceedings.  *Id.* at 667-69, 765-67.

4   ## 2.  <u>Right to be Present during the Proceedings</u>

5   Petitioner claims that his right to due process was violated when he was "not presen[t] at

6   trial, jury selection, opening arguments, examination of witness or evidences and sentencing."

7   Pet. at 5.  He complains that he was "not afforded the opportunity to be presen[t]" at these

8   proceedings, and that he "did not attend trial until eight days later after the prosecution rested

9   petitioner was denied due process."  *Id.*

10   Every person charged with a felony has a fundamental right to be present at every stage

11   of the trial.  *Illinois v. Allen*, 397 U.S. 337, 338 (1970).  "A defendant is guaranteed the right to

12   be present at any stage of the criminal proceeding that is critical to its outcome if his presence

13   would contribute to the fairness of the procedure."  *Kentucky v. Stincer*, 482 U.S. 730, 745

14   (1987).  This right is guaranteed by the Confrontation Clause of the Sixth Amendment and the

15   Due Process Clauses of the Fifth and Fourteenth Amendments.  *United States v. Gagnon*, 470

16   U.S. 522, 526 (1985) (per curiam).  The right to be present, like many other constitutional rights,

17   may be waived, provided such waiver is voluntary, knowing, and intelligent.  *See Gagnon*, 470

18   U.S. at 529; *Taylor v. United States*, 414 U.S. 17, 19-20 (1973).

19   A defendant may also lose the right to be present at trial by misconduct.  *Allen*, 397 U.S.

20   at 342-43; *Campbell v. Wood*, 18 F.3d 662, 671 (9th Cir. 1994).  "A defendant can lose his right

21   to be present at trial if, after he has been warned by the judge that he will be removed if he

22   continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so

23   disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him

24   in the courtroom." *Allen*, 397 U.S. at 343.  Once lost, "the right to be present can be reclaimed as

25   soon as the defendant is willing to conduct himself consistently with the decorum and respect

26   inherent in the concept of courts and judicial proceedings."  *Id.*  The right to be present during all

16

1   critical stages of the proceedings is subject to harmless error analysis.  *Rushen v. Spain*, 464 U.S.

2   114, 117 n.2 (1983) (per curiam); *Campbell v. Rice*, 408 F.3d 1166, 1172 (9th Cir. 2005).

3        As described above, the trial court concluded that petitioner voluntarily waived his right

4   to be present at trial and also lost the right to be present by his misconduct.  Petitioner disagrees

5   that he voluntarily waived his right to be present.  He states that he "was NOT ALLOWED to be

6   present not that the petitioner refused to go the Court officers only had to come to the holding

7   cell and bring to court but they did not."  Traverse at 5.  Petitioner also states that he was "just

8   waiting in the holding cell to be brought into the trial," *id.* at 6, and that he was "awaiting

9   patiently in the County Jail for the Sheriff to transport him to court for his right to be present at

10  his trial proceedings and the Sheriff did not bring him to court."  Suppl. Traverse at 3.[7]  In short,

11  petitioner denies that he was afforded the opportunity to attend the trial but refused to do so, as

12  described above and as reflected in the state court record.

13       Assuming *arguendo* that petitioner did not voluntarily waive his right to attend trial but

14  was "awaiting patiently" to be brought to the courtroom each day, this court nevertheless

15  concludes that petitioner lost the right to be present at trial by his misconduct.  *Allen*, 397 U.S. at

16  342-43; *Campbell*, 18 F.3d at 671.  The record reflects that petitioner was removed from the

17  courtroom after he refused to respond to the trial judge or to participate in the proceedings

18  because he was angry at the court for refusing to grant another trial continuance.  Petitioner

19  refused to face the bench and stated that he would not acknowledge the court or the judge.  The

20  trial judge warned petitioner that he would not be allowed to attend the trial if he refused to face

21  the court, and asked petitioner whether he intended to seated properly.  Petitioner refused to

22  answer and was removed.  Several court days later, when petitioner was brought into the

23  courtroom, he apparently threatened his trial counsel and swore at the court after being

24  physically restrained.  Petitioner was again removed from the proceedings.  At no time did

25  _____

26       [7]  Both the initial and the supplemental traverse have been filed under penalty of perjury.

1   petitioner act in such a way as to justify a return to the courtroom or to pro per status.  Quite

2   clearly, he did not show that he was "willing to conduct himself consistently with the decorum

3   and respect inherent in the concept of courts and judicial proceedings." *Allen*, 397 U.S. at 343.

4   Nor did petitioner make an affirmative request to return to the proceedings.[8]

5       Because of this behavior, petitioner lost the right to be present at the trial.  He was not

6   entitled to control and manipulate the proceedings by the use of threatening and aggressive

7   behavior which threatened the integrity of the courtroom and the safety of his attorney.  *See id.*

8   ("Nor can the accused be permitted by his disruptive conduct indefinitely to avoid being tried on

9   the charges brought against him.  It would degrade our country and our judicial system to permit

10  our courts to be bullied, insulted, and humiliated and their orderly progress thwarted and

11  obstructed by defendants brought before them charged with crimes.")  The trial court did not

12  abuse its discretion in ejecting petitioner from the courtroom because of his disorderly and

13  disrespectful behavior and his stated intention to continue to engage in the same behavior.  It is

14  also obvious from the state court record that the trial judge went to great lengths to accommodate

15  petitioner's constitutional rights while also maintaining the dignity of the courtroom.

16      This court also notes that there is no evidence in the record that petitioner's presence

17  would have contributed to the fairness or reliability of the proceedings, or that his absence

18  contributed to any unfairness.  On the contrary, petitioner's continued outbursts, confrontational

19  attitude, and angry demeanor would in all likelihood have prejudiced the jury against him.  There

20  is no evidence to indicate that petitioner's continuing presence in the courtroom was necessary to

21  ensure a fair trial.  Nor is there any evidence that petitioner's presence at the court trial on the

22  prior conviction allegations or the sentencing proceedings would have contributed to the fairness

23  of these procedures.  Nothing before the court raises any question as to the accuracy of the

24  documentation related to the prior conviction allegations.  Further, there is no indication that

25

26      [8]  As described above, the one time petitioner indicated he might be willing to return, he
    was brought into the courtroom but his behavior resulted in his removal again.

1  petitioner would have received a lesser sentence had he been present at the sentencing

2  proceedings.

3         Finally, the Supreme Court has made clear that criminal defendants have a right to

4  counsel at all "critical stages" of criminal proceedings.  *United States v. Wade*, 388 U.S. 218,

5  224 (1967).  The trial judge was careful to ensure that petitioner's right to counsel was protected

6  at all times during trial and sentencing.  He appointed counsel for petitioner after petitioner's

7  behavior necessitated his removal from the courtroom.  Although petitioner did not wish to

8  proceed with the appointed attorney, the trial court had previously found, apparently after several

9  hearings, that there was no reason to remove this attorney and appoint substitute counsel.  There

10 is no evidence before the court that any of petitioner's requests for substitute counsel were

11 improperly denied.  Further, while the Sixth Amendment guarantees criminal defendants the

12 right to effective representation, indigent defendants do not have a constitutional right to be

13 represented by the counsel of their choice.  *Caplin & Drysdale, Chartered v. United States*, 491

14 U.S. 617, 624 (1989); *Gonzalez v. Knowles*, 515 F.3d 1006, 1012 (9th Cir. 2008).  Petitioner was

15 free to hire counsel that he found acceptable, and he informed the court that he intended to do so,

16 but he never did.  Under these circumstances, there was no violation of petitioner's right to

17 counsel.

18        For all of the reasons discussed above, petitioner is not entitled to relief on his claim that

19 he was denied the right to be present at his trial and sentencing proceedings.

20                    **3.  <u>Right to Testify</u>**

21        Petitioner's next claim is that his right to due process was violated when he was "denied

22 the opportunity to testify at trial."  Pet. at 6.  Petitioner explains:

23              On 4/16/03 defendant was at trial, an [sic] ask by the presiding
             trial judge if the defendant would be taking the stand in his
24           defense, petitioner stated yes, but was excluded from the
             proceedings, the petitioner was never afforded the opportunity to
25           testify, a denial of due process.

26 *Id.  See also* Suppl. Traverse, Ex. A4 ("Defendant was asked by Judge Virga would defendant

                                        19

1    like to take stand in his defense (I stated 'yes.'")

2          The right of a criminal defendant to testify in his own defense is well established and is a

3    "'constitutional right of fundamental dimension.'"  *United States v. Pino-Noriega*, 189 F.3d

4    1089, 1094 (9th Cir. 1999) (quoting *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993)).

5    *See also Rock v. Arkansas*, 483 U.S. 44, 51 (1987).  A criminal defendant can waive his right to

6    testify at trial, so long as the waiver is knowing and voluntary.  *Pino-Noriega*, 189 F.3d at 1094.

7    However, "while waiver of the right to testify must be knowing and voluntary, it need not be

8    explicit."  *Id.* at 1094.  A trial court "has no duty to affirmatively inform defendants of their right

9    to testify, or to inquire whether they wish to exercise that right."  *Id.* at 1094-95 (citing *United*

10   *States v. Edwards*, 897 F.2d 445, 447 (9th Cir. 1990).  "[W]aiver of the right to testify may be

11   inferred from the defendant's conduct and is presumed from the defendant's failure to testify or

12   notify the court of his desire to do so."  *Joelson*, 7 F.3d at 177.  Although the right to testify at a

13   criminal trial is well-established, the right is not without limitation and "may, in appropriate

14   cases, bow to accommodate other legitimate interests in the criminal trial process ."  *Rock*, 483

15   U.S. at 55 (internal quotation marks omitted).

16         The state court's decision rejecting petitioner's claim that the trial court violated his right

17   to testify is neither contrary to nor an unreasonable application of federal law, nor is it based on

18   an unreasonable determination of the facts of this case.  Petitioner's allegation that he told the

19   trial court on April 16, 2003 he wanted to testify is flatly contradicted by the record of the

20   proceedings.  As described above, the record reflects that on the morning of April 16, petitioner

21   specifically told the deputy sheriff that he did not want to testify.  After he was brought to court,

22   petitioner told the trial judge he had not yet decided whether to testify.  He stated that he needed

23   to ascertain from his counsel what had occurred at the trial before making his decision.  After

24   consulting with his counsel and returning to the courtroom, petitioner became angry at being

25   restrained and demanded to leave the courtroom.  He also directed a profanity-laced speech at

26   the court.  In short, petitioner knew he had a right to testify at his trial but failed to exercise it

                                              20

and, indeed, acted in a manner that prevented his opportunity to testify.  Accordingly, he waived

his right to testify because of his behavior on April 16, 2003 and throughout the proceedings.

*See Allen*, 397 U.S. at 352-43; *United States v. Johnson*, 820 F.2d 1065, 1074 (9th Cir. 1987)

(noting that a defendant can waive the right to testify through contumacious conduct); *United*

*States v. Panza*, 612 F.2d 432, 438 (9th Cir. 1979) ("A defendant may waive the right (to testify)

either intentionally or by his conduct"); *United States v. Ives*, 504 F.2d 935, 941 (9th Cir.1974),

*vacated*, 421 U.S. 944 (1975); *reinstated in relevant part and vacated in part*, 547 F.2d 1100

(9th Cir. 1976) (same).  Under the circumstances presented here, there was no violation of

petitioner's right to testify.

### 4.  Ineffective Assistance of Appellate Counsel

Petitioner claims that his appellate counsel rendered ineffective assistance by failing to

raise a claim based on "the facts associated with self representation (Faretta)."  Pet. at 5.

Petitioner explains:

> Petitioner was granted pro per status on 2/27/03 in dept. 4 by
> Judge Bakarich, on State Appeal the procedural history of
> petitioner's Faretta status was not briefed to the reviewing
> appellate court which denied petitioner due process, appointed
> appellate counsel was responsible.

*Id.*  In the traverse, petitioner complains that his appellate counsel "clearly failed in her duties

not getting the transcripts or even briefing the petitioner on the issues."  Traverse at 5.  He also

argues that he was denied the right to counsel of his choice and that "there was a conflict with

petitioners counsel."  *Id.*  In his supplemental traverse, petitioner argues that he was "denied his

right to represent himself" and that appellate counsel's failure to raise this issue on appeal

constituted ineffective assistance.  Petitioner also claims that appellate counsel was ineffective in

failing to raise issues regarding petitioner's absence from the trial proceedings.  *Id.* at 2.

Petitioner states that he asked his appellate counsel to raise these issues but she declined to do

so.  *Id.*

////

1    Petitioner's claims, as described above, were summarily denied on the merits by the

2    California Supreme Court.  Therefore, this court must independently review the record to

3    determine whether habeas corpus relief is available under section 2254(d).  *Delgado*, 223 F.3d at

4    982.

5                           a.  <u>Legal Standards</u>

6                        I.  <u>Ineffective Assistance of Counsel</u>

7        The Sixth Amendment guarantees the effective assistance of counsel.  The United States

8    Supreme Court set forth the test for demonstrating ineffective assistance of counsel in *Strickland*

9    *v. Washington*, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of counsel, a

10   petitioner must first show that, considering all the circumstances, counsel's performance fell

11   below an objective standard of reasonableness.  *See Strickland*, 466 U.S. at  687-88.  After a

12   petitioner identifies the acts or omissions that are alleged not to have been the result of

13   reasonable professional judgment, the court must determine whether, in light of all the

14   circumstances, the identified acts or omissions were outside the wide range of professionally

15   competent assistance.  *Id*. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  Second, a

16   petitioner must establish that he was prejudiced by counsel's deficient performance.  *Strickland*,

17   466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for

18   counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at

19   694.  A reasonable probability is "a probability sufficient to undermine confidence in the

20   outcome."  *Id.  See also Williams*, 529 U.S. at 391-92; *Laboa v. Calderon*, 224 F.3d 972, 981

21   (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was

22   deficient before examining the prejudice suffered by the defendant as a result of the alleged

23   deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

24   sufficient prejudice . . . that course should be followed."  *Pizzuto v. Arave*, 280 F.3d 949, 955

25   (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 697).

26   ////

                                    22

The *Strickland* standards apply to appellate counsel as well as trial counsel. *Smith v. Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Counsel "must be allowed to decide what issues are to be pressed." *Id.* Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined." *Id. See also Smith v. Stewart*, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (Counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.")  There is, of course, no obligation to raise meritless arguments on a client's behalf. *See Strickland*, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing to raise a weak issue. *See Miller*, 882 F.2d at 1434.  In order to establish prejudice in this context, petitioner must demonstrate that, but for counsel's errors, he probably would have prevailed on appeal. *Id.* at 1434 n.9.

### ii.   Right to Self-Representation

The United States Supreme Court has held that a criminal defendant has a constitutional right to represent himself at trial, provided only that he knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol. *Faretta v. California*, 422 U.S. 806, 821, 832 (1975).  The holding of *Faretta* is based on "the long-standing recognition of a right of self-representation in federal and most state courts, and on the language, structure, and spirit of the Sixth Amendment." *McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984).

A defendant's right to self-representation may be revoked if he engages in disruptive behavior in the courtroom. *Faretta*, 422 U.S. at 834, n.46.  As the Supreme Court has explained:

////

23

> . . . the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. *See Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 [1970].  Of course, a State may – even over objection by the accused – appoint a "standby counsel" to aid the accused if and when the accused requests help, and to be available to represent the
>
> accused in the event that termination of the defendant's self-representation is necessary.  [Citation omitted.]
>
> The right of self-representation is not a license to abuse the dignity of the courtroom.

*Id.*  A criminal defendant may be removed from the courtroom during his own trial when he "engages in speech and conduct which is so noisy, disorderly, and disruptive that it is exceedingly difficult or wholly impossible to carry on the trial."  *Allen*, 397 U.S. at 338.  This is because "[i]t is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country."  *Id.* at 343.  To this end, "[t]he flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated."  *Id.*

### b. **Analysis**

Petitioner argues that his trial counsel rendered ineffective assistance in failing to raise claims based on the circumstances surrounding his request for self-representation and subsequent loss of that right.  The record reflects that appellate counsel considered these issues but rejected them because, in her view, they lacked merit.  As appellate counsel explained to petitioner in a letter, she "considered many other issues, including your request for continuance and your non-presence in the courtroom for almost all of your trial."  Suppl. Traverse, Ex. C2.  However, "[a]ccording to the record, the court made it clear to you on 2/27/03 that if you went pro per you would NOT get a continuance, but then the court granted you nearly a month's continuance anyway."  *Id.*  Counsel further noted that petitioner had been provided discovery and was advised he would be held to the same standard as a lawyer.  *Id.*  She noted that petitioner had chosen to "turn [his] back on the judge and the jury" and had "refused to come to court, although

24

you were asked if you wanted to come to court before each and every session." *Id.*  Counsel

further noted that the record reflected after petitioner was physically brought to the courtroom

after indicating he might come if ordered to appear, he "appeared, got angry, screamed and

yelled." *Id.*  In another letter, petitioner was advised by his appellate counsel's supervisor that

"[o]ne of the many reasons [appellate counsel] has decided not to raise this issue is the fact that

the court repeatedly found that you had voluntarily absented yourself from the trial" and that

"you were repeatedly offered the opportunity to return to court and that you declined the

invitation." *Id.*, Ex. C4.  It is apparent form this record that appellate counsel's decision to press

claims with arguably more merit than the claims suggested by petitioner was "within the range of

competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759,

771 (1970).

Petitioner has also failed to demonstrate that he probably would have prevailed if his

appellate counsel had raised claims related to his status as a pro per defendant.  Petitioner

requested the right to represent himself and his request was granted.  He then lost that right

because of his obstreperous behavior and counsel was appointed to represent him during the

remainder of the trial.  Petitioner consistently refused to attend the trial or to proceed with proper

decorum while he was in the courtroom.  His request to "have his pro per status returned"

because he was angry with the judge's decision to appoint Mr. Muller as his trial counsel was

appropriately denied.  He had not demonstrated that he was willing to behave appropriately in

the courtroom.  Therefore, any appellate claim based on a violation of petitioner's right to self-

representation was meritless.

**III.  Conclusion**

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

25

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  September 13, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE